UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SANDRA BLACKMON,

      Plaintiff,

v.                         Case No:  2:19-cv-625-FtM-NPM

LEE MEMORIAL HEALTH SYSTEM,

      Defendant.

_____

## OPINION AND ORDER

This matter comes before the Court on review of defendant's Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. #24) filed on October 12, 2020.  Plaintiff filed a Response and Opposition (Doc. #33) on November 16, 2020, to which Defendant filed a Reply (Doc. #37) on November 20, 2020.

Plaintiff Sandra Blackmon (Plaintiff or Blackmon) filed a two-count Complaint (Doc. #1) against her former employer Lee Memorial Health System (Lee Memorial or Defendant).  Both counts seek relief under the Family and Medical Leave Act of 1933 (FMLA).  Count I alleges a claim of unlawful interference under the FMLA for terminating her employment in January 2019, and thereby refusing to allow her to exercise her FMLA leave rights.  Count II alleges a claim of unlawful retaliation under the FMLA for terminating her employment in January 2019, because of her use or

attempted use of FMLA protected leave.  Lee Memorial now seeks summary judgment for each claim in the Complaint.  For the reasons set forth below, the motion is granted.

## I.

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party."  Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010).  A fact is "material" if it may affect the outcome of the suit under governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004)(quoting Anderson, 477 U.S. at 251).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the nonmoving party.  Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir.

2010). However, "[i]f reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999) (quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296-97 (11th Cir. 1983)). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." Allen v. Bd. of Pub. Educ. for Bibb Cty., 495 F.3d 1306, 1315 (11th Cir. 2007).

## II.

Viewed in the light most favorable to Plaintiff, the material relevant facts are as follows: Plaintiff was employed by Lee Memorial at the Golisano Children's Hospital (the Hospital) from November 2016 until her termination on January 24, 2019. (Doc. #24, ¶¶ 1, 3; Doc. #25-1, p. 18, 20; Doc. #33-1, ¶¶ 3, 6.) Plaintiff worked as a registered respiratory therapist in the Hospital's Respiratory Care Department, which provides diagnostic and therapeutic respiratory services to patients. (Doc. #24, ¶¶ 2-3; Doc. #28, ¶ 4; Doc. #33-1, ¶ 7; Doc. #44, p. 8, ¶ 2.) As a respiratory therapist, Plaintiff was required to "float" between various departments at the Hospital, including the Neonatal Intensive Care Unit (NICU), the Pediatric Intensive Care Unit (PICU), Pediatrics, and the Emergency Department. (Doc. #24, ¶ 4;

Doc. #27-1, ¶¶ 3-4; Doc. #28, ¶ 4; Doc. #33-1, ¶ 8; Doc. #44, p. 8, ¶ 3.)  In doing so, she was scheduled to work varying shifts in different departments. (Doc. #24, ¶ 5; Doc. #28, ¶ 4.)  Plaintiff primarily worked night shifts either in the NICU or PICU, on an as needed basis. (Doc. #24, ¶ 5.) Plaintiff reported to NICU supervisor La Reina Walsh and PICU supervisor Monica Collins (Ms. Collins), both of whom in turn directly reported to the Hospital's Director of Respiratory Care, Jeff Campbell (Director Campbell). (Doc. #24, ¶ 6; Doc. #27-1, ¶ 4; Doc. #28, ¶ 3; Doc. #33-1, ¶ 8; Doc. #44, p. 8, ¶ 4.)

On January 16, 2019, a video was taken of Plaintiff with her eyes closed and her feet propped up on the desk in the front of the Hospital's resuscitation room in the Emergency Department. (Doc. #28, ¶ 7; Doc. #28-2; Doc. #44, p. 10, ¶14.)  On or about January 21, 2019, the Director of the Emergency Services Department sent Director Campbell a text message along with a copy of the January 16, 2019 video. (Docs. ##28, ¶ 7; 28-1; 28-2; Doc. #44, p. 10, ¶ 14.)  In addition to the video, Director Campbell received written complaints from two Emergency Department employees which stated that on January 16, 2019 Plaintiff was sleeping in this position off and on for approximately one hour. (Doc. #28, ¶ 8; Doc. #44, p. 10, ¶ 15.)

The parties agree that on January 22, 2019 Director Campbell made the decision to terminate Plaintiff's employment. (Doc. #44,

p. 10, ¶ 16.)  Sleeping on-the-job is considered "gross misconduct" under Lee Memorial's Corrective Action Policy and called for immediate termination.  (Doc. #28, ¶¶ 9-10; Doc. #28-3, pp. 8-9; Doc. #44, p. 9, ¶ 7.)

On either January 22, or January 23, 2019, Director Campbell told Ms. Collins, Plaintiff's supervisor, of his decision to discharge Plaintiff. (Doc. #28, ¶ 11; Doc. #27-1, ¶ 7.) Ms. Collins agreed with Director Campbell's termination decision, although her agreement was unnecessary since Director Campbell was to sole decisionmaker.  (Doc. #27-1, ¶ 7; Doc. #28, ¶ 11.)  Director Campbell instructed Ms. Collins to schedule a meeting with himself, Ms. Collins, and Plaintiff on January 24, 2019, for the sole purpose of terminating Plaintiff's employment. (Doc. #27-1 ¶ 8; Doc. #28, ¶ 11.)

Later, on January 23, 2019, Plaintiff informed Ms. Collins that she may need FMLA leave for herself and was going to a doctor for testing. (Doc. #25-1, pp. 36, 42; Doc. #27-1, ¶ 9; Doc. #44, p. 10, ¶ 17.) Plaintiff also inquired of Ms. Collins about comments and looks she had received from her peers which made Plaintiff believe she was "in trouble again." (Doc. #25-1, p. 38.)  Plaintiff stated "[s]cuttlebutt has it that I'm in trouble for something." (Id.)  Ms. Collins asked Plaintiff if she had fallen asleep on-the-job, and informed Plaintiff that Director Campbell was going to talk with Plaintiff the following day.  (Id.; Doc. #33-1, ¶

29.)  Ms. Collins did not share any information about Plaintiff's possible need for FMLA leave with Director Campbell or any other Lee Memorial employee.  (Doc. #27-1, ¶ 9; Doc. #28, ¶ 14.)

According to Plaintiff, shortly after her discussion with Ms. Collins on January 23, 2019, she attempted (sometime after midnight) to submit an FMLA request for intermittent leave on Aetna's online portal, but she was unable to do so since the computer system generated an error message. (Doc. #25-1, p. 39.) Plaintiff indicated on her FMLA submission that she was requesting leave for either "personal illness" or "possible biopsies." (Id.)

The meeting to inform Plaintiff of her termination occurred as scheduled on January 24, 2019, with Director Campbell, Ms. Collins, and Plaintiff being present.  (Doc. #27-1, ¶ 10; Doc. #28, ¶ 12; Doc. #33-1, ¶ 31; Doc. #44, p. 10, ¶¶ 18-19.)  Director Campbell did not know of Plaintiff's recent discussion with Ms. Collins or attempted request for FMLA leave.  (Doc. #25-1, pp. 39, 45-46; Doc. #28, ¶ 13.)  Director Campbell informed Plaintiff she was being discharged due to sleeping on-the-job during her January 16, 2019 shift, which was considered gross misconduct and grounds for immediate dismissal pursuant to Lee Memorial's Policies. (Doc. #28-1, ¶ 12; Doc. #44, p. 10, ¶ 19.)  Plaintiff states that during the termination meeting she informed Director Campbell and Ms. Collins that she was filing for FMLA and referenced her possible "cancer."  (Doc. #33-1, ¶ 37.)  Director Campbell states in his

declaration that upon being notified of her termination, Plaintiff abruptly got up and proceeded to leave his office while making a comment about "cancer." (Doc. #28, ¶ 13.) Director Campbell did not have any knowledge about the meaning of Plaintiff's comment, nor was he able to speak with Plaintiff since she immediately left his office. (Id.)

### III.

"The FMLA provides eligible employees the right to 12 weeks of leave for a serious health condition that makes the employee unable to perform the functions of her position." Munoz v. Selig Enterprises, Inc., 981 F.3d 1265, 1274 (11th Cir. 2020) (citing Batson v. Salvation Army, 897 F.3d 1320, 1328 (11th Cir. 2018)); 29 U.S.C. § 2612(a)(1)(D)). The FMLA also creates private causes of action for equitable relief and money damages for employer violations of the FMLA. 29 U.S.C. §§ 2615(a)(1), 2617(a). An employee may bring two types of FMLA claims: "interference claims, in which an employee asserts that h[er] employer denied or otherwise interfered with h[er] substantive rights under the Act; and retaliation claims, in which an employee asserts that h[er] employer discriminated against h[er] because [s]he engaged in an activity protected by the Act." Strickland v. Water Works & Sewer Bd., 239 F.3d 1199, 1206 (11th Cir. 2001). See also Hurley v. Kent of Naples, Inc., 746 F.3d 1161, 1166 (11th Cir. 2014)("the FMLA allows employees to bring a private cause of action for

interference or retaliation."). Both FMLA interference and retaliation claims require the employee to establish that he or she qualified for leave. <u>Hurley</u>, 746 F.3d at 1166-67.

### A. FMLA Interference Claim

It is unlawful "for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" FMLA rights. 29 U.S.C. § 2615(a)(1). "An FMLA interference claim lies if an employee can demonstrate by a preponderance of the evidence that she was entitled to an FMLA benefit and her employer denied her that benefit." <u>Munoz</u>, 981 F.3d at 1274 (citation omitted). The employee must also show harm from the interference which is "remediable by either damages or equitable relief." <u>Id.</u> (citing <u>Evans v. Books-A-Million</u>, 762 F.3d 1288, 1295-96 (11th Cir. 2014)). Causation is not an element of an interference claim, but the employer can raise the lack of causation as an affirmative defense. <u>Spakes v. Broward County Sheriff's Office</u>, 631 F.3d 1307, 1309-10 (11th Cir. 2011). If an employer demonstrates that it would have discharged an employee "for a reason wholly unrelated to the FMLA leave, the employer is not liable" under the FMLA. <u>Strickland</u>, 239 F.3d at 1208. Courts look to whether the request for leave was the proximate cause of the termination. <u>Schaaf v. SmithKline Beecham Corp.</u>, 602 F.3d 1236, 1242 (11th Cir. 2010). Thus,

> Unlike with an FMLA retaliation claim, to succeed on an FMLA interference claim an employee need only demonstrate by a preponderance of the evidence that she

> was entitled to an FMLA benefit that was denied. In
> general, "the employer's motives are irrelevant" to an
> interference claim. Where the claim is based on an
> employee's termination, however, . . . an employer may
> affirmatively defend against the claim by establishing
> that it would have terminated the employee regardless of
> her request for or use of FMLA leave.

Batson, 897 F.3d at 1331 (internal citations omitted).

### B. FMLA Retaliation Claim

"The FMLA prohibits employers from retaliating against employees for engaging in protected activities." Munoz, 981 F.3d at 1275. To establish a FMLA retaliation claim, Plaintiff "must demonstrate that h[er] employer intentionally discriminated against h[er] in the form of an adverse employment action for having exercised an FMLA right." Aponte v. Brown & Brown of Fla., Inc., 806 F. App'x 824, 829 (11th Cir. 2020) (quoting Strickland, 239 F.3d at 1207. To establish a prima facie case of FMLA retaliation, Plaintiff must demonstrate that "(1) [s]he engaged in statutorily protected activity, (2) [s]he suffered an adverse employment decision, and (3) the decision was causally related to the protected activity." Martin v. Brevard Cty. Pub. Sch., 543 F.3d 1261, 1268 (11th Cir. 2008). A "close temporal proximity" between the protected expression and an adverse action is sufficient circumstantial evidence of a causal connection for purposes of a prima facie case. Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004).

In the absence of direct evidence of retaliatory intent, the McDonnell Douglas[1] burden-shifting framework applies.  Hurlbert v. St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1297 (11th Cir. 2006).  First, the employee must make a prima facie case for a retaliation claim. See Hurlbert, 439 F.3d at 1297. The burden then shifts to the employer to articulate a nondiscriminatory reason for the adverse action. Id. If the employer does so, the burden shifts back to the employee to produce evidence that the employer's reason is pretextual. Munoz, 981 F.3d at 1275; Hurlbert, 439 F.3d at 1297.  The employee shows that the employer's proffered reason was pretextual by presenting evidence "sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." Martin v. Brevard County Pub. Sch., 543 F.3d 1261, 1268 (11th Cir. 2008); Brooks v. Cty. Comm'n of Jefferson Cty., Ala., 446 F.3d 1160, 1163 (11th Cir. 2006).

## IV.

### A. Plaintiff's FMLA Interference Claim

Count I of the Complaint alleges that Lee Memorial interfered with plaintiff's right to FMLA leave by terminating her employment a day after she made a request to Ms. Collins for FMLA leave. (Doc. #1, at ¶¶ 9, 13-15, 18-19, 24.)  For summary judgment

---

[1] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

purposes, the evidence establishes that plaintiff was entitled to FMLA leave, her employment was terminated, and the termination precluded her from obtaining FMLA leave, thus resulting in harm to plaintiff which could be remedied by damages or equitable relief. Defendant does not argue to the contrary.

Defendant argues, however, that the undisputed evidence establishes a reason for the termination completely unrelated to the request for FMLA leave. (Doc. #24, pp. 19-20.) The Court agrees. The undisputed evidence shows that on January 22, 2019 - one day before Plaintiff spoke with Ms. Collins about possibly needing FMLA leave - Director Campbell made the decision to terminate Plaintiff based upon video and two written statements asserting that Plaintiff was sleeping during her January 16, 2019 work-shift. (Docs. ##28, ¶¶ 7-10; 28-1; 28-2; Doc. #44, p. 10, ¶¶ 16-17.) This termination decision was wholly unrelated to the FMLA leave, having been made prior to plaintiff's suggestion of a possible need for such leave or plaintiff's attempt to log-in to Aetna's designated online portal. See Strickland, 239 F.3d at 1208. Additionally, the undisputed evidence further establishes that Ms. Collins did not speak with Director Campbell or any other employee about Plaintiff's purported health issues or a possible need for FMLA leave prior to Director Campbell terminating plaintiff's employment on January 24, 2019. (Doc. #27-1, ¶¶ 9, 11.) Defendant therefore has established that the undisputed facts show

Plaintiff's termination was for a reason wholly other than her anticipated need for or request for leave. See Strickland, 239 F.3d at 1208. See also Krutzig, 602 F.3d at 1236 (summary judgment on an interference claim was proper because the decision maker not aware of a request for FMLA leave at time of the decision to terminate employment). Defendant's Motion for Summary Judgment as to Plaintiff's interference claim in Count I is granted.

Plaintiff's Response to Defendant's Motion for Summary Judgment asserts for the first time that there are other interference claims embedded within Count I relating to (1) failing to provide Plaintiff with certain information about her FMLA rights and eligibility; and (2) discouraging Plaintiff from using the FMLA leave. (Doc. #33, pp. 11-13.) The Complaint makes no mention of or reference to such additional interference claims, which allegedly date back to September 2017, prior to Plaintiff's FMLA eligibility that commenced in January 2018. See (Doc. #1; Doc. #33, pp. 11-13; Doc. #25-1, p. 28.)

"Rule 8(a)'s liberal pleading standard is inapplicable once discovery has commenced, . . .." Hurlbert, 439 F.3d at 1297. Despite the "liberal pleading standard for civil complaints," plaintiffs may not "raise new claims at the summary judgment stage." Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1314 (11th Cir. 2004). Thus, it is well settled that "[a] plaintiff may not amend [her] complaint through argument in a brief opposing

summary judgment." Varazo v. Keiser Corp., 754 F. App'x 918, 919 (11th Cir. 2018) (quoting Gilmour, 382 F.3d at 1315) (citation omitted). To permit a plaintiff to do otherwise would subject a defendant to unfair surprise. See White, 789 F.3d at 1200 (holding there was no basis for defendant to be on notice that plaintiff was alleging an employer-notice cause of action where three-page complaint contained no mention of the notice).

Plaintiff's Complaint provides no notice of interference claims based upon Defendant's prior alleged withholding of required notice under the FMLA or discouraging Plaintiff from using FMLA leave due to reprimands and fear of retaliation. See (Doc. #1, ¶¶ 7-31.) "Liberal pleading does not require that, at the summary judgment stage, defendants must infer all possible claims that could arise out of facts set forth in the complaint." Gilmour, 382 F.3d at 1315. In light of the foregoing, this portion of Plaintiff's Response is an impermissible attempt to amend the Complaint, and as such, provides no basis to deny summary judgment.

### B. Plaintiff's FMLA Retaliation

Plaintiff claims that her termination was in retaliation due to notifying Ms. Collins on January 23, 2019, that she may possibly need to take FMLA leave. (Doc. #1, ¶¶ 13-19; Doc. #33, p. 15.) For reasons discussed below, the Court finds Plaintiff has not established a prima facie case or that Defendant's stated reason for termination was pretextual.

**(1)   Plaintiff's Prima Facie Case**

It is undisputed that Plaintiff suffered an adverse employment action because Lee Memorial terminated her employment on January 24, 2019. Krutzig v. Pulte Home Corp., 602 F.3d 1231, 1234-35 (11th Cir. 2010) (recognizing termination as an adverse employment action); Munoz 981 F.3d at 1276-77 (recognizing the same).

For summary judgment purposes, Plaintiff also engaged in statutorily protected conduct by giving "[n]otice of an intent to use FMLA leave in the future," when she communicated to Ms. Collins on January 23, 2019, that she may require FMLA leave for personal health reasons. Pereda v. Brookdale Senior Living Cmtys., Inc., 666 F.3d 1269, 1274-75 (11th Cir. 2012).

Finally, Plaintiff must establish a causal connection between her request for future FMLA leave and her termination. Martin, 543 F.3d at 1268. To establish a causal connection, "an employee must demonstrate that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated." Munoz, 981 F.3d at 1277 (11th Cir. 2020) (quoting McCann v. Tillman, 526 F.3d 1370, 1376 (11th Cir. 2008)) (discussing causation required for a Title VII retaliation claim)(internal citations omitted). "Close temporal proximity between protected conduct and an adverse employment action is generally 'sufficient circumstantial evidence to create a genuine

issue of material fact of a causal connection.'" Hurlbert, 439 F.3d at 1298 (quoting Brungart, 231 F.3d at 799). Here, temporal proximity between Plaintiff's alleged protected activity on January 23, 2019, when she informed Ms. Collins she may take FMLA leave, and Plaintiff's January 24, 2019 termination occurred just one day apart, which is undoubtedly a sufficient causal connection. See e.g., Benz v. Crowley Mar. Corp., 731 F. App'x 794, 801 (11th Cir. 2018)(finding one day between an application for FMLA leave and termination created an inference of causation); Brungart, 231 F.3d at 799 (finding one day to be sufficient to raise an inference of causation).

Nevertheless, where "an employer contemplates an adverse employment action **before** an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation." Drago v. Jenne, 453 F.3d 1301, 1308 (11th Cir. 2006) (emphasis added)). See also, Krutzig, 602 F.3d at 1235-36 (citing Brungart, 231 F.3d at 799))("Temporal proximity alone, however, is not sufficient to establish a causal connection when there is unrebutted evidence that the decision maker was not aware of the protected activity."). The unrebutted evidence shows that on January 22, 2019, Director Campbell made the decision to terminate Plaintiff's employment, which was one day prior to Plaintiff's alleged protected activity. (Doc. #28, ¶¶ 9-10; Doc. #28-3, pp. 8-

9; Doc. #44, p. 10, ¶ 16.)   Furthermore, Plaintiff concedes that Ms. Collins never informed Director Campbell of "Plaintiff's FMLA request prior to and/or during communications between herself and Campbell or at Plaintiff's termination meeting . . .," which is confirmed by Director Campbell's declaration statements.   (Doc. #28, ¶¶ 14-17; Doc. #33, p. 17; Doc. #33-1, ¶ 38.) Plaintiff has not established a causal link between her FMLA leave request and her termination since Director Campbell not only made the decision to terminate Plaintiff **before** she requested FMLA leave, but Plaintiff also admits Campbell had no knowledge of her January 23, 2019 protected activity, at any time prior to her termination. See, e.g., Drago, 453 F.3d at 1308; Krutzig, 602 F.3d at 1235.

Plaintiff argues, however, that under the "cat's paw theory," causation is established in this case because Director Campbell followed the biased, discriminatory recommendation of Ms. Collins to terminate Plaintiff.   (Doc. #33, pp. 16-17.)   Under this theory, causation may be established in a retaliation case if "a plaintiff shows that the decisionmaker followed a biased recommendation without independently investigating the complaint against the employee, in such a case, the recommender is using the decisionmaker as a mere conduit, or "cat's paw" to give effect to the recommender's retaliatory animus." Jones v. City of Heflin, 207 F.Supp.3d 1255 (N.D. Ala. 2016) (citing Sims v. MVM, Inc., 704 F.3d 1327, 1335 n. 6 (11th Cir. 2013)). See also, Staub v. Proctor

Hospital, 562 U.S. 411, 415 (2011)(discussing the cat's paw theory).

The record is devoid of any evidence showing that Director Campbell followed the recommendation of Ms. Collins, biased or otherwise.  To the contrary, the undisputed evidence demonstrates that upon receiving video and two written accounts that Plaintiff was sleeping during her work-shift, Director Campbell alone made the decision to discharge Plaintiff. (Doc. #28, ¶¶ 7-10; Doc. #44, ¶ 16.)  Director Campbell stated in his declaration that while Ms. Collins agreed with his decision to terminate Plaintiff, "[he] did not need Ms. Collins' approval of [his] decision, but try to keep [his] supervisors in the loop on these type of decisions."  (Doc. #28, ¶ 11.)  Further, Plaintiff has not pointed to any record evidence demonstrating that Director Campbell failed to make an independent investigation concerning termination. See (Doc. #33.)  Rather, the evidence undisputedly shows that Director Campbell considered video and written statements sent to him by the Director of the Emergency Department and other employees, prior to making any termination decision and without any input from Ms. Collins. (Doc. #28, ¶¶ 7-10.)  Accordingly, the Court is unpersuaded by Plaintiff's argument that causation is established under the "cat's paw theory."  Defendant's Motion is therefore granted with respect to Plaintiff's FMLA retaliation claim, although the Court will alternatively continue the analysis of her claim.

### (2)  Lee Memorial's Articulated Reason for Termination

Lee Memorial states it terminated Plaintiff because she was sleeping on-the-job, which violated its Corrective Action Policy and called for immediate termination. (Doc. #28, ¶¶ 9-10; Doc. #28-3, pp. 8-9; Doc. #44, p. 9, ¶ 7.)  This stated reason satisfies the burden "to articulate a legitimate reason for [its] adverse action." Hurlbert v. St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1297 (11th Cir. 2006).

### (3)  Plaintiff's Showing of Pretext

Plaintiff has not produced any evidence that would allow a factfinder to conclude Defendant's stated reason for discharging her was pretextual. To show pretext, an employee must introduce evidence "sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." Jones v. Gulf Coast Health Care of Del., LLC, 854 F.3d 1261, 1274 (11th Cir. 2017) (quotation marks omitted). This evidence may include the evidence already produced by the employee to establish her prima facie case. A showing of pretext arises from "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action." Munoz, 981 F.3d at 1277–79.

Plaintiff first alleges that evidence of pretext exists based on Defendant's "obvious displeasure with Plaintiff taking time

off[,] which should have been deemed FMLA-protected leave[,]
deterred Plaintiff from taking FMLA leave to which she was
entitled, and misleading Plaintiff and then denying Plaintiff's
FMLA requests and refusal to provide FMLA documentation and/or
information upon notification of an FMLA-qualifying event . . .."
(Doc. #33, pp. 17-18.) In support, Plaintiff points to Ms. Collins'
discontentment and acts to dissuade Plaintiff from using FMLA
leave, which Plaintiff argues, establishes a retaliatory "state of
mind." (Id., p. 18.)

Upon careful review of the record, the Court finds there is
no evidence of Defendants' displeasure with Plaintiff for what
should have been FMLA leave. While the record shows that on
September 27, 2017 and February 1, 2018, Plaintiff received written
warnings for excessive absenteeism, the absences occurred in 2017,
prior to Plaintiff's eligibility for FMLA leave in January 2018.
(Doc. #33-1, ¶¶ 14-15; Doc. #33-3; Doc. #33-4.) Moreover, both
written warnings demonstrate Plaintiff was offered FMLA leave,
even if mistakenly so.[2] (Doc. #33-3; Doc. #33-4.)  As to any acts

---

[2] On September 27, 2017, Plaintiff received a written warning
for excessive absenteeism, and it was noted that she was offered
FMLA leave. (Doc. #33-1, ¶ 14; Doc. #33-3.)  Plaintiff later
testified, however, that her supervisor, Ms. Walsh, clarified that
leave would not be available until she became FMLA-eligible in
January 2018, but in doing so, Ms. Walsh directed Plaintiff to
look-up the Aetna website and complete the necessary paperwork as
soon as she qualified for leave. (Doc. #25-1, p. 28.)  The record

by Ms. Collins that show "discontentment" or in effect dissuaded Plaintiff form taking FMLA leave, Plaintiff has not provided evidence of such acts.  To the contrary, Plaintiff testified that Ms. Collins directed Plaintiff to go to Aetna's website and complete FMLA-related paperwork (Doc. #25-1, p. 28), and when she informed Ms. Collins that she planned on applying for FMLA leave in February 2018, Ms. Collins replied "okay." (Id., p. 29.) Likewise, when Plaintiff informed Ms. Collins on January 23, 2019, that she may need to take FMLA leave for personal health issues, Ms. Collins replied "thank you for telling [me] and sorry to hear that." (Id., p. 36.)  Thus, the Court is not convinced that Plaintiff has produced any evidence from which a reasonable jury could find Defendant's stated reason for terminating Plaintiff is pretextual.

Next, Plaintiff argues that she has established evidence of pretext through a comparator. (Doc. #33, pp. 18-19.) "[A] plaintiff must show that she and her comparators are similarly situated in all material respects." Lewis v. City of Union City, 918 F.3d 1213, 1224 (11th Cir. 2019) (en banc) (quotation marks omitted). A similarly situated comparator will have (1) "engaged in the same basic conduct (or misconduct)"; (2) "been subject to the same

_____

therefore establishes that in 2017, Employer informed Plaintiff that she would be FMLA-eligible in the beginning of 2018.

employment policy, guideline, or rule"; (3) usually (but not always) "been under the jurisdiction of the same supervisor"; and (4) "share the plaintiff's employment or disciplinary history." Lewis, 918 F.3d at 1227-28 (footnote and citations omitted). Plaintiff identifies only one comparator — Courtney, a night-shift lead respiratory therapist, who Plaintiff allegedly witnessed dozing off multiple times in the NICU, but "never longer than a minute or two." (Doc. #25-1, pp. 25-26.) Plaintiff, however, testified that she never reported to any supervisor that Courtney was sleeping during a work-shift, nor did Plaintiff know if anyone else reported the alleged misconduct and whether Director Campbell witnessed Courtney sleeping. (Id., p. 26.)

According to Director Campbell, he never observed Courtney sleeping during a scheduled shift, and he had not received any complaints that she had done so. (Doc. #28, ¶ 22.) "[P]roffered comparators' actions are only relevant if it is shown that the decision maker knew of the prior similar acts and did not discipline the rule violators." Summers v. City of Dothan, Ala., 444 F. App'x 346, 348-50 (11th Cir. 2011). Knowledge of a prior act cannot be imputed on a decision maker, because "[d]iscrimination is about actual knowledge, and real intent, not constructive knowledge and assumed intent." Silvera v. Orange Cnty. Sch. Bd., 244 F.3d 1253, 1262 (11th Cir. 2001). Even if the Court were to presume that Courtney was sleeping on-the-job, was

subject to same employment policies, and under the jurisdiction of the same supervisors, Plaintiff has failed to provide any evidence that Director Campbell, as the decision maker, knew of Courtney's alleged actions and did not discipline her. See Summers, 444 F. App'x at 348. Additionally, Plaintiff has not presented any evidence that Courtney shared Plaintiff's employment or disciplinary history. Lewis, 918 F.3d at 1227-28. "[A] plaintiff and her comparators must be sufficiently similar, in an objective sense, that they 'cannot reasonably be distinguished.'" Id. at 1227 (quoting Young v. United Parcel Serv., Inc., 575 U.S. 206, 135 S. Ct. 1338, 1355, 191 L. Ed. 2d 279 (2015)). Viewing all facts and reasonable inferences in the light most favorable to Plaintiff, the Court finds the allegations of pretext are insufficient to survive summary judgment.

Finally, Plaintiff argues that Defendant's own deviation from its well-established policies is evidence of pretext. (Doc. #33, p. 21.) The Eleventh Circuit has recognized that "an employer's deviation from its own standard procedures may serve as evidence of pretext." Tsavaris v. Savannah Law Sch., Ltd. Liab. Co., No. 20-11150, 2021 U.S. App. LEXIS 5579, at *12 (11th Cir. Feb. 25, 2021) (quoting Hurlbert, 439 F.3d at 1299). Plaintiff contends that in July 26, 2017, Defendant stated in a "1st Written Reminder" that Plaintiff was "noted to be dozing off to sleep in a chair,"

yet Plaintiff was not terminated.[3] (Doc. #33, p. 19; Doc. #33-2.) In contrast, following her FMLA leave request, Plaintiff alleges that Defendant implemented more severe punishment when it terminated her for sleeping while at work. (Doc. #33, p. 19.) Plaintiff attributes the disparate treatment to her FMLA requests. (Id., p. 20.)

Director Campbell, however, explained that unlike the January 2019 incident, in 2017, only one employee witnessed Plaintiff sleeping and Campbell had no other employee or evidence that could verify what the employee reported. (Doc. #28, ¶ 20.) Campbell therefore believed it was a "he said, she said" situation, and was insufficient evidence to find Plaintiff had committed gross misconduct and to trigger the immediate termination provision of Defendant's corrective action policy. (Id.) With respect to the January 2019 incident, Campbell stated he had clear, indisputable proof that Plaintiff was sleeping on-the-job when he received not only video, but two separate reports from employees in the Emergency Department who witnessed Plaintiff sleeping, that warranted Plaintiff's termination. (Id. at ¶ 21.)

Based on the foregoing, the Court finds Plaintiff has failed to introduce evidence sufficient to create a genuine issue of fact

---

[3] On July 26, 2017, Plaintiff received a "1st Written Reminder" for "disruptive behavior and performance issues," in addition to being noted as dozing off to sleep. (Doc. #33-2.)

as to Defendant's deviation from its own standard procedures. While Plaintiff may disagree with Director Campbell's implementation of Defendant's policies, more than an employee's subjective disagreement is required to establish pretext. See Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000)("A plaintiff is not allowed to . . . substitute his business judgment for that of the employer."); Combs v. Plantation Patterns, 106 F.3d 1519, 1543 (11th Cir. 1997) ("[A] plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason."); Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991) ("Federal courts do not sit as a super-personnel department that reexamines an entity's business decisions. . . . Rather, our inquiry is limited to whether the employer gave an honest explanation of its behavior." (quotation marks omitted)). In sum, Plaintiff has not shown that any alleged deviation by Defendant from its policies was pretextual in nature. Because Plaintiff has not proffered sufficient evidence to create a genuine issue of material fact regarding whether Defendant's articulated reason for her termination is pretextual, Defendant is entitled to summary judgment on Plaintiff's claim. Mitchell v. Pilgrim's Pride Corp., 817 F. App'x 701, 709 (11th Cir. 2020).

Accordingly, it is now

**ORDERED:**

1.    Defendant's Motion for Summary Judgment (Doc. #24) is **GRANTED**. The Clerk of the Court shall enter judgment in favor of defendant Lee Memorial Health System as to both counts of the Complaint.

2.    Defendant Lee Memorial's Motion in Limine (Doc. #43) is **DENIED as moot.**

**DONE AND ORDERED** at Fort Myers, Florida, this   3rd   day of March, 2021.


_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE



Copies:
Parties of record

25